FILED
2017 Feb-08  PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BALKRISHNA SETTY, individually and as general partner of Shrinivas Sugandhalaya Partnership with Nagraj Setty, and SHRINIVAS SUGANDHALAYA (BNG) LLP,<br><br>        Plaintiffs,<br><br>v.<br><br>SHRINIVAS SUGANDHALAYA LLP and R. EXPO (USA), INC.,<br><br>        Defendants.<br>_____<br><br>R. EXPO (USA) LTD., INC.,<br><br>        Counter-Plaintiff,<br><br>v.<br><br>BALKRISHNA SETTY, individually and as general partner of Shrinivas Sugandhalaya Partnership with Nagraj Setty, SHRINIVAS SUGANDHALAYA (BNG) LLP, and DESIGNS BY DEE KAY, INC.,<br><br>        Counter-Defendants. | **Case No. 2:16-CV-02013-JHE** |

## R. EXPO (USA) LTD., INC.'S COUNTERCLAIM

In addition to the Answer and Defenses filed contemporaneously with this Counterclaim, which is adopted as if fully set forth herein, Counter-plaintiff R.

Expo (USA) LTD., Inc. ("R. Expo") hereby files this Counterclaim for damages and declaratory judgment against Counter-defendants Shrinivas Sugandhalaya (BNG) LLP, Balkrishna Setty in his individual capacity, and Balkrishna Setty as general partner of Shrinivas Sugandhalaya Partnership,[1] and against third-party counter-defendant Designs by Dee Kay, Inc. In support of this Counterclaim, R. Expo alleges the following:

<b><u>PARTIES</u></b>

1.      R. Expo is a Washington corporation with its principal place of business located at 2703 West Valley Highway North, Auburn, Washington 98001.

2.      Upon information and belief, Shrinivas Sugandalhaya (BNG) LLP ("Shrinivas BNG") is a foreign limited liability partnership with its principal place of business at No. 282 / 1, Opposite Bapujinagar Bus Stand, Byatarayanapura, Mysuru Road, Bengaluru – 560 026, Karnataka, India.

3.      Upon information and belief, the Shrinivas Sugandhalaya Partnership (the "Old Partnership") is[2] a foreign partnership with its principal place of business at 1/9, 8th Cross, Magadi Road, Bengaluru – 560 023, India.

---

[1] As set forth below, R. Expo names the Old Partnership as a counter-defendant only to the degree that the Old Partnership is a plaintiff in this action or to the degree that the Old Partnership claims to hold trade dress rights that are properly R. Expo's. The Old Partnership's formal position both in relation to the Complaint and in relation to R. Expo's trade dress rights is unclear to R. Expo at this time – particularly as Nagraj Setty has indicated to R. Expo that the Old Partnership is making no claims against R. Expo or its trade dress rights.

[2] R. Expo will refer to the existence of the Old Partnership in the present tense throughout this Counterclaim, but does not waive, and expressly reserves, any and all claims, arguments,

4.      Upon information and belief, Balkrishna Setty ("Balkrishna") is a citizen of India residing at No. 1679, 15th Main Road, B.S.K. 2nd Stage, Bengaluru – 560 070, India. Balkrishna is an owner and partner of Shrinivas BNG and the Old Partnership.

5.      Upon information and belief, Designs by Dee Kay, Inc. ("Dee Kay") is a corporation organized and existing under the laws of the State of California, with its principal place of business at 4668 W. Mission Boulevard, Montclair, California 91763.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121(trademarks); 28 U.S.C. § 1331 (Federal question); 28 U.S.C. § 1338 (unfair competition); and 28 U.S.C. § 1367 (supplemental jurisdiction). R. Expo's claims are predicated on the Lanham Act of 1946, as amended, 15 U.S. C. § 1051 *et seq.,* and substantial and related claims under the statutory and common laws of the State of Washington.

7.      This Court has personal jurisdiction over Shrinivas BNG, Dee Kay, and Balkrishna, individually and as general partner of the Old Partnership (collectively, "Counter-Defendants") because, on information and belief, Counter-

---

and defenses that would otherwise be available if it becomes clear that the Old Partnership has ceased to exist – either in whole or in part – at some point before the filing of this Counterclaim or during the pendency of this action.

Defendants have transacted business within this District, including by selling the infringing incense products that are the basis of this Counterclaim.  Further, this Court has personal jurisdiction over Balkrishna, individually and as general partner of the Old Partnership, and over Shrinivas BNG because each has consented to this Court's jurisdiction by filing a Complaint in this action with this Court.

8.      Venue is technically proper in this Court pursuant to 28 U.S.C. § 1391. However, this case could initially have been filed in U.S. District Court for the Western District of Washington and, under 28 U.S.C. § 1404(a), that judicial district is a venue better suited "for the convenience of the parties and witnesses." This case should therefore be transferred. [3]

## FACTUAL BACKGROUND

### I.      *R. Expo's Trade Dress & Relationship with the Old Partnership*

9.      R. Expo imports (among other things) a line of incense products from India, which it sells to wholesalers, and/or to distributors, and/or to retailers in the United States, in Canada, and in other countries.

10.     Until or about 2014, R. Expo's primary incense supplier from India was the Shrinivas Sugandhalaya Partnership (the "Old Partnership").  On

---

[3] By filing this compulsory counterclaim under Fed. R. Civ. P. 13(a), R. Expo does not waive, and expressly reserves, all arguments that venue is not proper in this Court or that venue is more appropriate in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred" – such as Seattle, Washington. 28 U.S.C. § 1391(b)(2); *see also* R. Expo's Motion to Transfer, filed contemporaneously with this Counterclaim.

information and belief, the Old Partnership is owned, at least in part, by the brothers Nagraj Setty ("Nagraj") and Balkrishna Setty ("Balkrishna").

11.    For multiple lines of incense – namely those lines of incense now branded SANDALWOOD, BLESSINGS, SUNRISE, PATCHOULI FOREST, MIDNIGHT, CELESTIAL, ROMANCE, JASMINE BLOSSOM, FORTUNE, RAIN FOREST, MIDNIGHT, and EGYPTIAN MUSK – R. Expo was the Old Partnership's exclusive importer and distributor in the United States. R. Expo closely controlled each line's branding in order to make the brands more distinctive and raise consumer awareness of each incense product (the "R. Expo Exclusive Incense Products").

12.    The Old Partnership produced other lines of incense that were imported into the United States by other distributors such as Dee Kay. Sometimes such other lines were provided to others exclusively (as with the incense lines branded MONEY, DRAGON'S BLOOD, YOGA, and NIRVANA, which were produced for Dee Kay). Sometimes such other lines were provided non-exclusively, and were provided to Dee Kay, R. Expo, and perhaps others (as with the incense lines branded SATYA SAI BABA NAG CHAMPA and SATYA NAG CHAMPA) (the "Non-Exclusive Incense Products").

13.    Beginning in 2007, and as part of its work to develop the R. Expo Exclusive Incense Products by increasing brand awareness and the distinctiveness

of the R. Expo Exclusive Incense Products, R. Expo directed the Old Partnership to brand and package its incense products using particular brands and packaging designs specified by R. Expo, and manufactured exclusively for R. Expo's import and resale as the R. Expo Exclusive Incense Products.

14.     This distinctive family of incense product names and packaging designs – developed by R. Expo, manufactured at the direction of R. Expo, according to specifications provided by R. Expo, and produced by the Old Partnership exclusively for R. Expo's import and distribution – constitutes protectable trade dress (the "R. Expo Trade Dress").

15.     R. Expo owns all right, title, and interest, in the United States and elsewhere, to the R. Expo Trade Dress.

16.     From 2007 to the present, R. Expo has made a substantial investment in the development of the R. Expo Trade Dress, to create what have become distinctive indicia of the R. Expo Exclusive Incense Products.

17.     The R. Expo Trade Dress is inherently distinctive.

18.     The R. Expo Trade Dress has also established secondary meaning in the marketplace such that purchasers, on the wholesale level, at the distributor level, at the retail seller level, and on the consumer level, have come to associate the R. Expo Trade Dress with R. Expo.

19.    The R. Expo Trade Dress includes the overall appearance and color schemes provided by its incense product packages.

20.    In each case, the R. Expo Trade Dress includes the following protectable elements:

    a.  A colorful box, generally parallelepiped in shape, when assembled and closed.

    b.  A rectangular label arranged near the middle on the face side of the box with English word "INCENSE". The rectangular label has a narrow white border, and just inside the white border, a thicker red borderline.  Within the red borderline appear the following:

        i.  Red writing in a sized font style, to provide the PRODUCT NAME.

        ii.  Red writing below the PRODUCT NAME in sized font style, to provide the word INCENSE, or with the word AGARBATTI.

        iii.  The name of the manufacturer in India, (formerly simply "Shrinivas Sugandhalaya," now "Shrinivas Sugandhalaya LLP"), in a unique font.

        iv.  The address of the manufacturer in India.

        v.  The mark SATYA in white letters within a dark blue oval.

    c.  End seals, affixed at each end, to seal each product box, and within the end seals:

        i.  A red stripe;

        ii.  A blue stripe, and within the stripe, white ovals with the word SATYA.

d. Two or more lines of text appear on the faces of the box, including the name of the supplier (formerly simply "Shrinivas Sugandhalaya," now "Shrinivas Sugandhalaya LLP"), and one or more of the words SATYA, NAG CHAMPA, and SAI BABA.

21.   Examples of the R. Expo Trade Dress, in the format as presently received from Shrinivas Sugandhalaya LLP, are shown below, and in **Ex. A**:





22.    From 2007 until sometime in or about 2014, R. Expo imported the R.

Expo Exclusive Incense Products and other incense products into the United States

from the Old Partnership in the specified R. Expo Trade Dress.

23.     All of the R. Expo Exclusive Incense Products, , whether from the Old Partnership or from Shrinivas Sugandhalaya LLP, have been and are now marked with the following legend:



24.     In several instances, R. Expo has also registered the R. Expo Trade Dress with the U.S. Patent and Trademark Office.

25.     R. Expo owns U.S. Trademark Registration No. 3,405,140 for the mark PATCHOULI FOREST for use with INCENSE CONTAINING PATCHOULI OIL, in International Class 3.

26.     In connection with the application for registration of the mark PATCHOULI FOREST, which ultimately resulted in the issue of U.S. Trademark Registration No. 3,405,140, a specimen was submitted on August 1, 2007, which appears of record at the US Trademark Office, as follows:



27.     R. Expo has used its mark PATCHOULI FOREST for its incense products since at least March 2, 2007.

28.     R. Expo also owns U.S. Trademark Registration No. 3,398,272 for the mark MIDNIGHT for use with INCENSE, in International Class 3.

29.     In connection with the application for registration of the mark MIDNIGHT, which ultimately resulted in the issue of U.S. Trademark Registration No. 3,398,272, a specimen was submitted on August 1, 2007, which appears of record at the US Trademark Office, as follows:



## II.     *Fraternal Competition & Infringement of the R. Expo Trade Dress*

30.     In or about 2014, the brothers Nagraj and Balkrishna ceased doing business as a partnership, each founding their own company to continue the production of incense, and of other products, as competitors.

31.     In or about 2014, Nagraj formed a new business, namely Shrinivas Sugandhalaya LLP ("Shrinivas LLP") in Mumbai, Maharashtra, India.

32.     In or about 2015, Balkrishna formed a new business, namely Shrinivas BNG, of Bengaluru, India.

33.     In the wake of the apparent breakup of the Old Partnership's business (*but see supra*, n. 1 & 2), R. Expo is now obtaining the same R. Expo Exclusive Incense Products, and other incense products, from Shrinivas LLP, utilizing the same R. Expo Trade Dress developed by R. Expo between 2007 and 2014.

34.     Because R. Expo (and not the Old Partnership) held all rights, title, and interest – in the United States and elsewhere – to the R. Expo Trade Dress, R. Expo continues to have exclusive rights to the use of the R. Expo Trade Dress in connection with the importation, marketing, distribution, and sale of incense products within the United States and elsewhere, regardless of who has the rights to produce the R. Expo Exclusive Incense Products or the Non-Exclusive Incense Products themselves.

35.     In spite of this, and upon information and belief, Shrinivas BNG and Balkrishna now produce incense products for importation, marketing, distribution, and sale within the United States in packaging that is virtually indistinguishable from the R. Expo Trade Dress (the "Infringing Incense Products").

36.     Upon information and belief, a first set ("Set 1") of eleven (11) different brands of Infringing Incense Products are produced by Shrinivas BNG for, and are imported, marketed, distributed, and sold by Dee Kay.

37.     Examples of the Set 1 of Infringing Incense Products are shown below, as well as in **Ex. A**:





38.     Upon information and belief, a second set ("Set 2") of nineteen (19) different Infringing Incense Products are produced for and imported, marketed, distributed, and sold by Shrinivas BNG to entities other than Dee Kay. Examples of the Set 2 of Infringing Incense Products as produced for buyers other than or additional to Dee Kay are shown in **Ex. B**.

39.     In marketing materials and online, the Counter-Defendants display the Infringing Incense Products for sale in the same general colors, overall visual

appearance, dimensions, shape, box aspect ratios, label design, and appearance as the R. Expo Trade Dress, as described in Paragraph 20, *supra*.

40.    Counter-Defendants have slavishly copied the R. Expo Trade Dress.

41.    In each case, the following elements and aspects of the R. Expo Trade Dress has been slavishly copied by Counter-Defendants:

a.   A colorful box, of virtually identical size and generally parallelepiped in shape, when assembled and closed.

b.   A rectangular label arranged near the middle on the face side of the box with English word "INCENSE" or "AGARBATTI" (a word derived from Sanskrit meaning incense). The rectangular label has a narrow white border, and just inside the white border, a thicker red borderline.  Within the red borderline appear the following:

   i.   Red writing in a sized font style, to provide the PRODUCT NAME.

   ii.  Red writing below the PRODUCT NAME in sized font style, to provide the word INCENSE or AGARBATTI.

   iii. The name of its manufacturer in India, namely **Shrinivas Sugandhalaya (BNG) LLP**, of **Bengaluru**, India, in confusingly similar, if not virtually identical font.

   iv.  The address of the manufacturer in India.

15

        v.  The mark SATYA.

    c.  End seals, affixed at each end, to seal each product box, and within the end seals:

        i.  A red stripe;

        ii.  A blue stripe, and within the stripe, white ovals with the word SATYA in blue lettering.

    d.  Two or more lines of text appear on the faces of the box, including the name of the supplier, **Shrinivas Sugandhalaya**, and one or more of the words SATYA, NAG CHAMPA, and SAIBABA.

42.    Further, on information and belief and in at least one case – and after R. Expo's extensive sales of incense bearing the mark PATCHOULI FOREST – Counter-Defendants began offering to sell and selling incense bearing the mark 60's PATCHOULI to substantially the same wholesalers, distributors, retailers, and/or consumers.

43.    On information and belief, the packaging of the incense produced, offered for sale, and sold by Counter-Defendants bearing their mark 60's PATCHOULI is in packaging confusingly similar to the distinctive R. Expo Trade Dress and R. Expo's U.S. Trademark Registration No. 3,405,140 for the mark PATCHOULI FOREST for use with INCENSE CONTAINING PATCHOULI OIL, in International Class 3.

44.     The Counter-Defendants' misappropriation of the R. Expo Trade Dress is likely to cause confusion, mistake, or deception in the minds of wholesalers, distributors, retailers, and/or consumers as to the source or origin of merchandise sold Counter-Defendants because of the sales of incense in virtually identical packaging to the same wholesalers, distributors, retailers, and/or consumers, as compared to incense products and packaging sold by R. Expo.

45.     R. Expo has made Counter-Defendants aware of such trade dress infringement, trade mark infringement, and unfair competition, by letter dated November 25, 2015. Counter-Defendants have thus far completely failed to take any affirmative action in the market place whatsoever to cease such infringing activity.

46.     Upon information and belief, although Counter-Defendants' activities related to this Counterclaim have been national in scope and have affected this judicial district, among others, Counter-Defendants' have had systematic and continuous contacts with the State of Washington, and have purposefully directed their activities at residents of Washington, including its wholesalers, distributors, retailers, and the consuming public, and R. Expo's Washington state law counterclaims arise out of, or are related to, Counter-Defendants' activities in or directed to residents and the consuming public in the State of Washington.

## COUNT I
## TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125)

47.     R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

48.     R. Expo owns all right, title, and interest, in the United States and elsewhere, to the R. Expo Trade Dress, as described above.

49.     From 2007 to the present, R. Expo has made a substantial investment in the development of the R. Expo Trade Dress, to create what have become distinctive indicia of the R. Expo Exclusive Incense Products imported and distributed by R. Expo.

50.     The R. Expo Trade Dress is inherently distinctive.

51.     The R. Expo Trade Dress has also established secondary meaning in the marketplace such that purchasers, on the wholesale level, at the distributor level, at the retail seller level, and on the consumer level, have come to associate the R. Expo Trade Dress with R. Expo.

52.     In marketing materials and online, Counter-Defendants display the Infringing Incense Products for sale in the same general colors, overall visual appearance, dimensions, shape, box aspect ratios, label design, and appearance as the R. Expo Trade Dress, as described in Paragraph 20, *supra*.

53.     Counter-Defendants have slavishly copied the R. Expo Trade Dress.

54.     The Infringing Incense Products' misappropriation of the R. Expo Trade Dress is likely to cause confusion, mistake, or deception in the minds of wholesalers, distributors, retailers, and/or consumers as to the source or origin of merchandise sold by Counter-Defendants because of the sales of incense in virtually identical packaging to the same wholesalers, distributors, retailers, and/or consumers, as compared to incense products and packaging sold by R. Expo.

55.     R. Expo has made Counter-Defendants aware of such trade dress infringement, trade mark infringement, and unfair competition, by letter dated November 25, 2015. Counter-Defendants have thus far completely failed to take any affirmative action in the market place whatsoever to cease such infringing activity, making their continued infringement willful.

56.     Upon information and belief, by their willful conduct and infringement of the R. Expo Trade Dress, Counter-Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity, at the expense of R. Expo's profits and market share.

57.     By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer irreparable damages unless restrained by this Court. R. Expo is without an adequate remedy at law, and this Court has the authority to grant an injunction in favor of R. Expo pursuant to 15 U.S.C. § 1116(a).

58.    By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer damages, and is entitled to recover unlawful profits, damages, treble damages, and costs and fees from Counter-Defendants under 15 U.S.C. § 1117 in an amount to be proven at trial.

**COUNT II**
**TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

59.    R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

60.    R. Expo owns U.S. Trademark Registration No. 3,405,140 for the mark PATCHOULI FOREST for use with INCENSE CONTAINING PATCHOULI OIL, in International Class 3.

61.    R. Expo has used its mark PATCHOULI FOREST for its incense products since at least March 2, 2007.

62.    After R. Expo's extensive sales of incense bearing the mark PATCHOULI FOREST, on information and belief, Counter-Defendants began offering to sell and selling incense bearing the mark 60's PATCHOULI to substantially the same wholesalers, distributors, retailers, and/or consumers.

63.    On information and belief, the packaging of the incense produced, offered for sale, and sold by Counter-Defendants bearing their mark 60's PATCHOULI is in packaging confusingly similar to the distinctive R. Expo Trade Dress, and is confusingly similar to the mark PATCHOULI FOREST set out in R.

Expo's U.S. Trademark Registration No. 3,405,140 for the mark PATCHOULI FOREST for use with INCENSE CONTAINING PATCHOULI OIL, in International Class 3.

64.     Counter-Defendants' misappropriation of R. Expo's Trade Dress and its use of the confusingly similar mark 60's PATCHOULI is likely to cause confusion, mistake, or deception in the minds of wholesalers, distributors, retailers, and/or consumers as to the source or origin of merchandise sold by Counter-Defendants, because of the sales of incense in virtually identical packaging to the same wholesalers, distributors, retailers, and/or consumers, as compared to the incense products and packaging that is sold by R. Expo.

65.     R. Expo has made Counter-Defendants aware of such trade dress infringement, trade mark infringement, and unfair competition, by letter dated November 25, 2015. Counter-Defendants have thus far completely failed to take any affirmative action in the market place whatsoever to cease such infringing activity, making their continued infringement willful.

66.     Upon information and belief, by their willful conduct and infringement of the R. Expo's trademark (Registration No. 3,405,140), Counter-Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity, at the expense of R. Expo's profits and market share.

67.     By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer irreparable damages unless restrained by this Court. R. Expo is without an adequate remedy at law, and this Court has the authority to grant an injunction in favor of R. Expo pursuant to 15 U.S.C. § 1116(a).

68.     By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer damages, and is entitled to recover unlawful profits, damages, treble damages, and costs and fees from Counter-Defendants under 15 U.S.C. § 1117 in an amount to be proven at trial.

**COUNT III**
**UNFAIR COMPETITION (15 U.S.C. § 1125)**

69.     R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

70.     The R. Expo Trade Dress is non-functional.

71.     The R. Expo Trade Dress is inherently distinctive.

72.     The R. Expo Trade Dress has acquired secondary meaning.

73.     Counter-Defendants have intentionally copied the R. Expo Trade Dress in a willful attempt to capitalize on the reputation and goodwill built up by R. Expo in the R. Expo Trade Dress.

74.     On information and belief, Counter-Defendants have sold, and continue to sell products which incorporate and slavishly copy the R. Expo Trade Dress.

75.     On information and belief, S Counter-Defendants have purchased, and are currently importing for resale in the US, additional products which incorporate and slavishly copy the R. Expo Trade Dress.

76.     The look and feel of the Infringing Incense Products being produced, marketed, offered for sale, and sold by Counter-Defendants are virtually identical to the look and feel of the products imported, marketed, offered for sale, and sold by R. Expo.

77.     On information and belief, the Counter-Defendants' Infringing Incense Products have caused consumer confusion or mistake by falsely suggesting that Counter-Defendants' Infringing Incense Products are connected with, sponsored by, affiliated with, approved by, or related to R. Expo.

78.     On information and belief, Counter-Defendants' distribution, sale, marketing, and otherwise promoting sales of goods in packaging virtually identical to the look and feel of the products marketed, offered for sale, and sold by R. Expo has created a false designation of origin.

79.     On information and belief, the distribution, sale, marketing, and promotion of goods in virtually identical packaging by Counter-Defendants has

been made with the intent to unfairly compete against R. Expo, and to trade upon R. Expo's reputation and goodwill by causing confusion and mistake amongst customers and the public into believing that Counter-Defendants' goods are associated with, or sponsored by, or approved by R. Expo, when they are not.

80.    Unless enjoined, Counter-Defendants' Infringing Incense Products are likely to continue to cause consumer confusion or mistake by falsely suggesting that Counter-Defendants' Infringing Incense Products are connected with, sponsored by, affiliated with, approved by, or related to R. Expo.

81.    Counter-Defendants' sale of Infringing Incense Products constitute trade dress infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

82.    R. Expo has made Counter-Defendants aware of such trade dress infringement, trade mark infringement, and unfair competition, by letter dated November 25, 2015. Counter-Defendants have thus far completely failed to take any affirmative action in the market place whatsoever to cease such infringing activity, making their continued infringement willful.

83.    Upon information and belief, Counter-Defendants' infringing activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damages to R. Expo's business reputation and to the goodwill associated with the R. Expo Trade Dress, including diversion of

customers, lower profits on sales actually made, and lost sales and lost profits thereon.  R. Expo has no adequate remedy at law. This Court has the authority to granted an injunction in favor of R. Expo pursuant to 15 U.S.C. § 1116(a).

84.    By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer damages, and is entitled to recover unlawful profits, damages, treble damages, and costs and fees from Counter-Defendants under 15 U.S.C. § 1117 in an amount to be proven at trial.

### COUNT IV
### DECLARATION OF TRADE DRESS RIGHTS (28 U.S.C. § 2201)

85.    R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

86.    The R. Expo Trade Dress is non-functional.

87.    The R. Expo Trade Dress is inherently distinctive.

88.    The R. Expo Trade Dress has acquired secondary meaning.

89.    R. Expo owns all right, title, and interest, in the United States and elsewhere, to the R. Expo Trade Dress.

90.    Counter-Defendants are infringing upon the R. Expo Trade Dress.

91.    None of Shrinivas BNG, Dee Kay, Balkrisha (personally), nor even the Old Partnership own any of the R. Expo Trade Dress rights or any good will associated therewith.

92.    Shrinivas BNG, Dee Kay, and Balkrishna, either individually or in his capacity as a partner of the Old Partnership,[4] claim ownership rights in the R. Expo Trade Dress and continue to willfully infringe the R. Expo Trade Dress.

93.    R. Expo has made Counter-Defendants aware of such trade dress infringement, trade mark infringement, and unfair competition, by letter dated November 25, 2015. Counter-Defendants have thus far completely failed to take any affirmative action in the market place whatsoever to cease such infringing activity, claiming instead that they have the right to use R. Expo's distinctive and hard earned trade dress.

94.    Upon information and belief, Counter-Defendants' infringing activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damages to R. Expo's business reputation and to the goodwill associated with the R. Expo Trade Dress, including diversion of customers, lower profits on sales actually made, and lost sales and lost profits thereon.  R. Expo has no adequate remedy at law other than a declaration and determination of this Court that R. Expo is sole owner of the R. Expo Trade Dress.

---

[4] *See supra*, n. 1.

## COUNT V
## <u>WASHINGTON UNFAIR BUSINESS PRACTICES ACT (RCW 19.86.020)</u>
### (SHRINIVAS BNG & DEE KAY)

95.    R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

96.    Counter-Defendants' unauthorized use of the R. Expo Trade Dress constitutes an unfair and deceptive act or practice amounting to an unfair method of competition under the Washington Unfair Business Practices – Consumer Protection Act, R.C.W. 19.86.020, *et seq*.

97.    Counter-Defendant's unauthorized use of the R. Expo Trade Dress adversely affects members of the consuming public, who when confronted with displays of Infringing Incense Products, may be confused or deceived as to the actual source or origin of the Infringing Incense Products, causing substantial injury to such consumers, due to the slavish copying by Counter-Defendants of the R. Expo Trade Dress.

98.    R. Expo has made Counter-Defendants aware of such trade dress infringement, trade mark infringement, and unfair competition, by letter dated November 25, 2015. Counter-Defendants have thus far completely failed to take any affirmative action in the market place whatsoever to cease such infringing activity, making their continued infringement willful.

99.   Upon information and belief, Counter-Defendants' infringing activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damages to R. Expo's business reputation and to the goodwill associated with the R. Expo Trade Dress, including diversion of customers, lower profits on sales actually made, and lost sales and lost profits thereon.  R. Expo has no adequate remedy at law. This Court has the authority to grant an injunction in favor of R. Expo.

100.   By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer damages, and is entitled to recover damages, treble damages, and costs and fees from Counter-Defendants under RCW 19.86.090 in an amount to be proven at trial.

## COUNT VI
## WASHINGTON COMMON LAW UNFAIR COMPETITION
### (SHRINIVAS BNG & DEE KAY)

101.   R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

102.   Counter-Defendants' unauthorized use of the R. Expo Trade Dress has been for the calculated purpose of passing off Counter-Defendants' products as those of R. Expo and its suppliers, thus trading on R. Expo's goodwill and reputation, and deceiving the public as to the true nature and characteristics of

Counter-Defendants' products, all to Counter-Defendants' profit and to R. Expo's damage.

103.   Counter-Defendants' acts constitute unfair competition under the common law of the State of Washington.

104.   Upon information and belief, Counter-Defendants' infringing activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damages to R. Expo's business reputation and to the goodwill associated with the R. Expo Trade Dress, including diversion of customers, lower profits on sales actually made, and lost sales and lost profits thereon.  R. Expo has no adequate remedy at law. This Court has the authority to granted an injunction in favor of R. Expo.

105.   By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer damages, and is entitled to recover damages from Counter-Defendants in an amount to be proven at trial.

**COUNT VII**
**WASHINGTON COMMON LAW TRADE DRESS INFRINGEMENT**
**(SHRINIVAS BNG & DEE KAY)**

106.   R. Expo realleges each previous paragraph of this Counterclaim as if fully set forth herein.

107.   R. Expo, by virtue of its prior adoption and use of the R. Expo Trade Dress has acquired, established, and now owns common law rights in the R. Expo Trade Dress.

108.   Counter-Defendants' slavish copying and unauthorized use of the R. Expo Trade Dress constitutes copying and imitation of the R. Expo Trade Dress that falsely designates the origin of Counter-Defendants' products.

109.   Counter-Defendants' slavish copying and unauthorized use of the R. Expo Trade Dress causes confusion and mistake to the public, including both direct and indirect buyers of R. Expo's products.

110.   Counter-Defendants' slavish copying and unauthorized use of the R. Expo Trade Dress is likely to continue to cause further confusion and mistake to the public and in the marketplace, including direct and/or indirect direct buyers of R. Expo's products, and therefore infringes R. Expo's common law rights in the State of Washington.

111.   Counter-Defendants' acts, unless enjoined by this Court, will result in the likelihood of further and continuing confusion, mistake, and deception to the public and the marketplace, concerning the sources or origin of products offered for sale by Counter-Defendants. Counter-Defendants' continuing activities will continue to produce irreparable injury and damage to R. Expo, damage its goodwill and reputation, for which R. Expo has no adequate remedy at law.

112. By reason of the conduct of Counter-Defendants, R. Expo has suffered and will continue to suffer damages, and is entitled to recover damages from Counter-Defendants in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, R. Expo respectfully prays for the following relief:

1.     That the Court declare that R. Expo has sole and exclusive rights to use the R. Expo Trade Dress in the United States in connection with the importation, marketing, distribution, and sale of incense products.

2.     That the Court issue an injunction requiring that Counter-Defendants, their officers, agents, servants, and employees, successors and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be enjoined and restrained from:

(a) offering to sell, selling, distributing, marketing, or importing into the United States any product infringing on the R. Expo Trade Dress;

(b) using in any manner the R. Expo Trade Dress, or any confusingly similar or colorable imitation of the R. Expo Trade Dress; and

(c) doing any act or thing that is calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers of R. Expo or Shrinivas BNG, Balkrishna, and/or Dee Kay as to the source of

the products offered for sale, distributed, or sold, or that is likely to deceive members of the pubic or prospective customers of R. Expo or Shrinivas BNG, Balkrishna, and/or Dee Kay, into falsely believing that there is some connection, affiliation, or sponsorship between R. Expo and Counter-Defendants.

3.      That the Court order as part of the injunction that Counter-Defendants be directed to file with this Court and serve on Plaintiff within thirty (30) days after issuance of the injunction, a report in writing under oath, setting forth in detail the manner and form in which Counter-Defendants have complied with the injunction.

4.      That as a further part of the injunction, Counter-Defendants be required to deliver up and destroy all of Counter-Defendants' products in the Infringing Incense Product packaging bearing the R. Expo Trade Dress in any manner, or any trade dress or product configuration that is confusingly similar to or a colorable imitation of the R. Expo Trade Dress.

5.      That as a further part of the injunction, Counter-Defendants be required to recall all goods sold and remaining in stock at its retailers, retail stores, wholesalers, or agents, and all other persons in active concert or participation with any of them, and deliver up and destroy all of Counter-Defendants' products in the accused product packaging bearing the R. Expo Trade Dress in any manner, or any

trade dress or product configuration that is confusingly similar to or a colorable imitation of the R. Expo Trade Dress.

6.      That the Court order an accounting of Counter-Defendant's sales, and the profits and damages resulting from Counter-Defendants' trademark infringement, trade dress infringement, unfair competition, and false designation of origin.

7.      That the Court enter judgment for R. Expo and against Counter-Defendants in the amount of the Counter-Defendant's profits, the amount of R. Expo's actual damages, and costs.

8.      That, under the circumstances of this case, the Court enter judgment above the amount found as actual damages, in an amount three times actual damages.

9.      That the Court find this case to be exceptional, and award reasonable attorney's fees.

10.      That the Court grant R. Expo prejudgment interest and costs.

11.      That the Court grant such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff R. Expo (USA) LTD., Inc. hereby demands a trial by jury on all issues so triable.

Respectfully submitted on February 8, 2017.

/s/ Michael P. Taunton
**Michael P. Taunton**

**OF COUNSEL:**

Marcus R. Chatterton
E-mail: mchatterton@balch.com
Michael P. Taunton
E-mail: mtaunton@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

Brian G. Bodine, *pro hac vice* pending
E-mail: bodineb@lanepowell.com
Adriane M. Scola, *pro hac vice* pending
E-mail: scolaa@lanepowell.com
LANE POWELL PC
1420 5th Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
*Attorneys for Defendant/Counter-*
*Plaintiff R. Expo (USA) LTD., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2017, I have served a copy of the

foregoing via U.S. mail and/or the Court's CM/ECF system to the following:

Scott S. Brown
E-mail: scottbrown@maynardcooper.com
C. Brandon Browning
E-mail: bbrowning@maynardcooper.com
MAYNARD COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205-254-1000
Facsimile: 205-254-1999
*Attorneys for Plaintiffs/Counter-Defendants*
*Balkrishna Setty, both individually and as general*
*partner for Shrinivas Sugandhalaya Partnership,*
*and Shrinivas Sugandhalaya(BNG) LLP*

Shrinivas Sugandhalaya LLP
E-105, Ansa Industrial Estate
Saki Vihar Road, Sakinaka
Mumbai, Maharashtra 400 072
INDIA

Designs by Dee Kay, Inc.
c/o Deyendra K. Agarwal
4668 W. Mission Boulevard
Montclair, California 91763

*/s/ Michael P. Taunton*
OF COUNSEL