UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BALKRISHNA SETTY, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SHRINIVAS SUGANDHALAYA LLP, *et al.*,<br><br>　　　　　　　Defendants. | Case No. C17-1146-MLP<br><br>ORDER |

## I.　　INTRODUCTION

This matter is before the Court on Defendant Shrinivas Sugandhalaya LLP's ("Defendant"): (1) Motion to Seal (dkt. # 249); (2) Motion for Relief from Deadlines to Pay Fees (dkt. # 251); and (3) Motion to Stay the Case (Mot. Stay (dkt. # 242)). No opposition or reply was filed for the Motion to Seal. Plaintiffs Balkrishna Setty and Shrinivas Sugandhalaya (BNG) LLP (together, "Plaintiffs") filed an opposition to the Motion for Relief from Deadlines to Pay Fees (dkt. # 258), but Defendant did not file a reply. Plaintiffs filed an opposition to the Motion to Stay (Resp. (dkt. # 252)) and Defendant filed a reply (Reply (dkt. # 257)). Having considered the parties' briefing, oral argument, the governing law, and the balance of the record, the Court

ORDER - 1

GRANTS the Motion to Seal (dkt. # 249), GRANTS in part and DENIES in part the Motion for Relief from Deadlines to Pay Fees (dkt. # 251), and DENIES the Motion to Stay (dkt. # 242).

## II.    BACKGROUND

According to Plaintiffs' operative complaint, Balkrishna Setty and Nagraj Setty are brothers whose late father, K.N. Satyam Setty, founded an incense manufacturing and distribution business using the name Shrinivas Sugandhalaya. (Am. Compl. (dkt. # 163), ¶ 16.) After his passing, the brothers initially formed a partnership to carry on his business. (*Id.*, ¶¶ 14-16.) Around 2014, Balkrishna Setty formed Plaintiff Shrinivas Sugandhalaya (BNG) LLP and Nagraj Setty formed Defendant Shrinivas Sugandhalaya LLP. (*Id.*, ¶¶ 52, 54.) Plaintiffs manufacture handmade incense products at facilities located at "1/9, 8th Cross, Magadi Rd, Bengaluru" in India. (*Id.*, ¶¶ 53, 75.) Defendant manufactures machine-made incense products in Mumbai, India. (*Id.*, ¶¶ 55, 75.) Both use the Shrinivas Sugandhalaya mark popularized by the elder Mr. Setty. (*See id.*, ¶¶ 16-17, 52, 54.) Among other claims, Plaintiffs allege Defendant falsely and misleadingly printed Plaintiffs' Bengaluru address on Defendant's products in violation of Plaintiffs' intellectual property rights, leading to consumer confusion and lost sales. (*Id.*, ¶¶ 79, 83, 87-89.)

In December 2016, Plaintiffs filed this action in the Northern District of Alabama. (Dkt. # 1.) In July 2017, the action was transferred to this Court before the Honorable Richard A. Jones. (Dkt. ## 35-36.) In June 2018, the Court denied Defendant's motion to dismiss or stay in favor of arbitration in India. (Dkt. # 72.) Defendant appealed the denial to the Ninth Circuit and, in November 2018, this Court stayed the action pending appeal. (Dkt. ## 78, 90.) The Ninth Circuit affirmed the denial but granted a stay of the mandate pending filing of a petition for a writ of certiorari. (Dkt. ## 91-93.) The Supreme Court granted certiorari, vacated the judgment,

ORDER - 2

and remanded for further consideration. (Dkt. # 98 at 4.) In January 2021, the Ninth Circuit again affirmed. (*Id.* at 6.) The opinion was withdrawn; however, the Ninth Circuit issued a new opinion affirming the denial in July 2021. (Dkt. ## 100-04.)

Based on consent to magistrate judge jurisdiction in the parties' joint status report, the action was transferred to the undersigned in October 2021. (Dkt. ## 108, 110.) Trial was set for August 2023. (Dkt. # 109.)

In January 2023, the Court granted the parties' stipulated motion to stay the action for 60 days based on a global settlement in principle of all claims in the United States and India. (Dkt. ## 121-22.) In March 2023, the Court granted the parties' request for an extension and ordered them to provide either a stipulated dismissal or a detailed explanation of what steps remained within 60 days. (Dkt. ## 123-24.) In May 2023, the parties explained that the global settlement required transfer of an extensive amount of intellectual property to Plaintiffs, and requested an additional 60 days. (Dkt. # 125 at 2-3.) The Court administratively closed this action due to the lack of any active dispute and ordered the parties to either file a stipulation of dismissal or move to reopen the case in the event settlement was not perfected by September 5, 2023. (Dkt. # 126.)

On September 5, 2023, Plaintiffs moved to reopen the case because the preconditions to dismissing this action had not been met. (Dkt. # 127.) Defendant opposed the motion on the grounds that the parties had executed a binding settlement agreement. (Dkt. # 130.) The Court ordered the case reopened because of the dispute over whether an enforceable settlement agreement existed, and subsequently denied reconsideration of the Order because it was undisputed that the conditions precedent for dismissing this action had not been met. (Dkt. ## 133, 139.)

ORDER - 3

Trial was set for May 2025. (Dkt. # 140.) In June 2024, the Court granted Plaintiffs' motion to amend their complaint, in response to which Defendant filed an amended answer and counterclaim. (Dkt. ## 143, 162-64.) Pursuant to the parties' request, in October 2024 the Court appointed a settlement judge. (*See* dkt., 10/8/24.) Two former parties settled all claims and were dismissed from this action. (Dkt. # 207.) Defendant's former counsel withdrew and current counsel appeared. (Dkt. ## 173, 187, 194.)

In December 2024, Plaintiffs filed a motion to compel discovery from Defendant. (Dkt. # 199.) The Court held multiple hearings and status conferences on the matter and, on March 12, 2025, granted Plaintiffs' motion to compel. (Dkt. ## 217-23.) Subsequently, on March 28, 2025, the Court found Defendant in contempt for failing to comply with the Court's discovery Orders and imposed sanctions, fining Defendant $250.00 for each day it was not in substantial compliance with the Orders. (Dkt. # 232.) On April 16, 2025, the Court ordered Defendant to pay Plaintiffs $20,870.00 for their reasonable attorneys' fees by May 16, 2025. (Dkt. # 237.) On May 23, 2025, the Court found Defendant had substantially complied with the discovery Orders, halted further sanctions, and ordered Defendant to pay the Court $14,250.00 for sanctions imposed from March 27 through May 22, 2025. (Dkt. # 245.) Payment was due by June 6, 2025. (*Id.* at 2.) The Court further noted that Defendant had not paid Plaintiffs their attorneys' fees as ordered, and that additional sanctions would be considered if Defendant had not paid by June 6, 2025. (*Id.*)

On May 22, 2025, Defendant filed the Motion to Stay. (Mot. Stay.) Defendant contends this action should be stayed until the conclusion of an action filed by Nagraj Setty on May 3, 2025, in India. (*Id.*)

ORDER - 4

On June 5, 2025, Defendant filed the Motion for Relief from Deadlines to Pay Fees and the Motion to Seal, along with an audit report filed provisionally under seal. (Dkt. ## 242, 250-51.) On June 9, 2025, Defendant filed a praecipe requesting a profit and loss statement, provisionally filed under seal, to be included in the Motion to Seal and considered in relation to the Motion for Relief from Deadlines to Pay Fees. (Dkt. ## 254-55.)

Trial is now set for January 26, 2026. (Dkt. # 241 at 1.) The parties have scheduled depositions in India during the weeks of July 28 and August 4, 2025. (*See* dkt. # 243.) Discovery will close on August 18, 2025. (Dkt. # 241 at 1.) Dispositive motions are due September 16, 2025. (*Id.*)

### A.    Motion to Seal

In support of its Motion for Relief from Deadlines to Pay Fees, Defendant filed an audit report and a profit and loss statement provisionally under seal. (Dkt. ## 250, 255.) Defendant requests an order maintaining the documents under seal. (Dkt. # 249.)

Under the Court's Local Rules, "[t]here is a strong presumption of public access to the court's files." Local Civil Rule ("LCR") 5(g); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). As the Ninth Circuit explained in *Kamakana v. City & Cnty. of Honolulu*, "judicial records are public documents almost by definition, and the public is entitled to access by default." 447 F.3d 1172, 1180 (9th Cir. 2006). To rebut the presumption of public access, a party must file a motion that includes "a specific statement of the applicable legal standard and the reasons for keeping a document under seal, with evidentiary support from declarations where necessary." LCR 5(g)(3)(B).

When sealed materials are attached to a non-dispositive motion "unrelated to the merits of a case," such as here, the moving party "need only satisfy the less exacting 'good cause'

standard." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

Defendant contends that the audit report and profit and loss statement contain "extremely confidential" information, including "forward-looking strategies" for dealing with its poor financial health, that if made public would harm Defendant's public standing or could result in competitive injury. (Dkt. # 249 at 3.) The Court finds good cause to seal the records. *See, e.g.*, *Rydman v. Champion Petfoods USA Inc.*, 2023 WL 2711837, at *2 (W.D. Wash. Mar. 30, 2023) (Even under more stringent compelling reasons standard, court granted motion to seal "materials contain[ing] confidential and sensitive business information that, if revealed, would cause Defendants to suffer a competitive harm.").

### B. Motion for Relief from Deadlines to Pay Fees

Defendant requests a six-month extension of time to pay the sanctions owed to Plaintiffs and to the Court. (Dkt. # 251.) Defendant argues it is under "severe economic hardship resulting in part from this very litigation." (*Id.* at 2.) Defendant submitted an audit report that it argues shows "substantial declines in profitability that stemmed from lowering prices to remain competitive" and also shows an increase in legal expenses compared to the prior year.[1] (*Id.* (citing dkt. # 250).) Plaintiffs oppose the Motion, contending Defendant has not explained how the audit report demonstrates extreme financial hardship. (Dkt. # 258 at 3-4.) In the alternative, Plaintiffs suggest imposing an installment plan. (*Id.* at 4.)

---

[1] Defendant also submitted a profit and loss statement, but does not make a specific argument as to how it demonstrates financial hardship. (*See* dkt. # 255.)

ORDER - 6

The Court has reviewed the sealed audit report, which indicates that Defendant operates at a profit although it may have some cash flow issues. (*See* dkt. # 250.) At oral argument, Defendant indicated it could manage installment payments. (*See* dkt. # 260.) Accordingly, the Court orders Defendant to make monthly payments on the first of the month for six months beginning on July 1, 2025.

### C. Motion to Stay

On May 3, 2025, Nagraj Setty filed a complaint in Bengaluru City Civil Court against Plaintiffs and several others (including Defendant). (Mot. Stay, Ex. 1 (dkt. # 242-1) at 2-5.) The Bengaluru suit contests ownership of property at "No. 9/1 (Old No. 1/A) . . . 8th Cross Road, . . . Magadi Road, Bengaluru," which the parties agree is the Bengaluru address at issue in this action. (*Id.* at 6; *see* Resp. at 2.) The suit alleges the property was the brothers' father's personal property and never belonged to the original Shrinivas Sugandhalaya business. (Mot. Stay, Ex. 1 at 13-15.) Because the elder Mr. Setty died intestate, the property allegedly belongs to the brothers and their mother. (*Id.* at 16.) The Bengaluru suit seeks to rescind transfer of the property to Plaintiffs, which occurred by means of a General Power of Attorney in 2015-2016, based on allegations that Balkrishna Setty misrepresented the ownership and Nagraj Setty did not read the General Power of Attorney carefully at the time. (*Id.* at 10, 13-14.) Nagraj Setty alleges that when he "carefully went through" the recitals in the General Power of Attorney that he had signed in 2016, he "discovered something suspicious." (*Id.* at 14.) The "misleading recitals, on careful reading, revealed" the property ownership issue and led to the filing of the complaint. (*Id.*)

Pursuant to Federal Rule of Civil Procedure 26 and the Court's inherent authority to manage its docket, Defendant requests the Court stay this action pending the outcome of the

ORDER - 7

Bengaluru litigation. (Mot. Stay at 3.) Defendant contends the outcome of that litigation "will completely change who owns [the property], and thus, permission to use the . . . address on packaging." (*Id.* at 6.)

Plaintiffs contend Defendant's Motion is untimely and submitted for purposes of delay. (Resp. at 2-3.) Plaintiffs further contends the ownership of the Bengaluru property is immaterial to its intellectual property claims because Defendant's placement of the address on its packaging created consumer confusion as to where the product was manufactured. (*Id.* at 4.)

        1.     *Applicable Legal Standard*

The parties indicate two different standards may be at issue here. (*See* Mot. Stay at 7-8; Resp. at 4.) Under *Colorado River Water Conservation Dist. v. United States*, when both federal and state courts have jurisdiction but no abstention doctrine applies, the federal court may stay or dismiss an action "for reasons of wise judicial administration" under "exceptional" circumstances, such as when a state court earlier assumed jurisdiction over property. 424 U.S. 800, 818 (1976). A federal court also has inherent docket management authority to stay an action in favor of parallel litigation "in rare circumstances." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Although both *Colorado River* and *Landis* involved parallel state court litigation, they have been applied where parallel foreign litigation is at issue. In assessing a district court's application of *Colorado River* to parallel foreign litigation, the Ninth Circuit specifically "reject[ed] the notion that a federal court owes greater deference to foreign courts than to our own state courts." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991).

The Ninth Circuit has clarified that in a case involving "simultaneous and related federal and state actions, the proper analysis is under *Colorado River*, not *Landis*." *Ernest Bock, LLC v.*

*Steelman*, 76 F.4th 827, 842 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 554 (2024). The Court "expressly h[e]ld that the *Colorado River* factors control whether a stay can issue in favor of parallel state proceedings." *Id.* at 843. "A docket management stay may not issue in favor of parallel state proceedings if the *Colorado River* factors do not support a stay." *Id.* Accordingly, *Colorado River*, not *Landis*, supplies the correct standard here.[2]

### 2. Colorado River Factors

"[A]bsent 'exceptional circumstances,' federal courts have an obligation to exercise their jurisdiction concurrently with other courts." *Neuchatel*, 925 F.2d at 1194 (quoting *Colorado River*, 424 U.S. at 818). Based on *Colorado River* and subsequent case law, the Ninth Circuit has elucidated eight factors for a district court to consider:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). Any doubt as to a given factor should be resolved against a stay. *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1188 (9th Cir. 2024).

Prerequisite to a *Colorado River* stay is a showing that the foreign litigation will resolve the federal action. "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the

---

[2] Defendant cites a recent case where a district court concluded that, where the stricter *Colorado River* criteria were not met, a stay could be entered under *Landis*. (Mot. Stay at 8 (citing *Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*, 2025 WL 1090941, at *18 (C.D. Cal. Apr. 9, 2025) ("in situations where the foreign proceeding will not fully resolve all the issues before the federal court, *Landis* applies, not *Colorado River*.")).) That decision is currently on appeal and, in any case, this Court must apply binding Ninth Circuit precedent.

ORDER - 9

complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Where there is "a substantial doubt" that the foreign court proceedings will resolve all of the disputed issues in the federal case, a *Colorado River* stay is not warranted and the other factors need not be weighed. *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1208 (9th Cir. 2021). A substantial doubt exists if only one of several likely outcomes will resolve the federal litigation. "[A] *Colorado River* stay cannot issue when . . . federal litigation will be fully resolved only if parallel state court proceedings end in one of several possible outcomes[.]" *Ernest Bock, LLC*, 76 F.4th at 832.

The Court must first decide whether the facts of a particular case meet the requirements for a *Colorado River* dismissal. If so, the Court may exercise its discretion in determining whether to stay the case. *Mendocino Ry.*, 113 F.4th at 1188. "[T]he decision whether to dismiss [or stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16.

        3.     Analysis

A *Colorado River* stay cannot issue unless the Bengaluru litigation will lead to the complete and prompt resolution of the action before this Court. Defendant contends Plaintiffs' claims here must be dismissed if the Bengaluru court grants Nagraj Setty "any rights" to the Bengaluru property. (Mot. Stay at 9.) Plaintiffs argue their claims do not turn on the ownership

of the property, but on Defendant misleading consumers by representing that it manufactured its products in Bengaluru, which is known for high quality incense. (Resp. at 4.)

Defendant argues that allegations in this action that it made "false or misleading statements" using the Bengaluru address would have been made about property Nagraj Setty co-owned, and vaguely refers to Nagraj Setty "asserting legitimate rights" to his own property. (Mot. Stay at 9.) On reply, Defendant counters that if Defendant owns the property, it is entitled to a share of Plaintiffs' profits and thus is not a competitor, or that it is permitted to place one of its corporate addresses on its packaging.[3] (Reply at 5-6 (citing *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F. Supp. 2d 195, 236 (D. Conn. 2004).) The decision Defendant cites is on summary judgment, however, and indicates that whether an address on packaging is misleading or material is an issue of fact. *New Colt*, 312 F. Supp. 2d at 236.

The Court finds the Bengaluru litigation is not sufficiently parallel to support a *Colorado River* stay here. The entire Bengaluru complaint revolves around ownership of the Bengaluru property, which is not explicitly at issue in this action. Moreover, it is unlikely that the Bengaluru litigation will fully resolve this action, even indirectly. As Plaintiffs point out, the Bengaluru litigation will not assess whether Plaintiffs lost sales in the U.S. due to consumer confusion. (Resp. at 6.) Defendant's vague and unsupported assertions that it will defeat Plaintiffs' claims in this action if Nagraj Setty prevails in the Bengaluru litigation are insufficient. Even if the Bengaluru court both resolves that litigation in Nagraj Setty's favor and awards him some ownership rights, Defendant has not shown that this action will be resolved. Defendant acknowledges that even if Nagraj Setty wins, the Bengaluru court "might fashion

---

[3] Nagraj Setty, not Defendant, is the complainant in the Bengaluru litigation.

ORDER - 11

another remedy." (Mot. Stay at 9.) At minimum there will remain a factual issue as to whether using the Bengaluru address was misleading if, in context, it implies place of manufacture.

Defendant has not met the heavy burden to displace the presumption that a federal court must exercise its jurisdiction. *See, e.g.*, *Campbell v. Swedish Club Cultural Ctr.*, 2025 WL 1397070, at *4 (W.D. Wash. May 13, 2025) ("By relying upon vague, general assertions . . . Defendants have failed to show that they are entitled to a *Colorado River* dismissal."). Because the Bengaluru litigation is insufficiently parallel, the other factors need not be weighed and a *Colorado Stay* is not available. Defendant's Motion to Stay is denied.

### III.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    The Motion to Seal (dkt. # 249) is GRANTED. The audit report and profit and loss statement (dkt. ## 250, 255) shall be maintained under seal.

(2)    The Motion to Delay Fees (dkt. # 251) is GRANTED in part and DENIED in part.

(a)    Defendant is ORDERED to make payments to the Court of **$2,375.00** each month on **July 1, August 1, September 1, October 1, November 1, and December 1, 2025**.

(b)    Defendant is ORDERED to make payments to Plaintiffs on the following schedule: **$3,478.33** due on **July 1, August 1, September 1, October 1, and November 1, 2025**; and **$3,478.35** due on **December 1, 2025**.

(3)    The Motion to Stay (dkt. # 242) is DENIED.

Dated this 25th day of June, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12