UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BALKRISHNA SETTY, *et al.*,

    Plaintiffs,

v.

SHRINIVAS SUGANDHALAYA LLP, *et al.*,

    Defendants.

Case No. C17-1146-MLP

ORDER

## I. INTRODUCTION

This matter is before the Court on Plaintiffs Balkrishna Setty and Shrinivas Sugandhalaya (BNG) LLP's (together, "Plaintiffs") Motion for Entry of Default Judgment and Permanent Injunction. (Mot. (dkt. # 278).) Pursuant to the Court's order, Plaintiffs filed additional briefing. (Suppl. (dkt. # 290).) Having considered Plaintiffs' briefing, the governing law, and the balance of the record, the Court GRANTS Plaintiffs' Motion (dkt. # 278) in part.

## II. BACKGROUND

Defendant Shrinivas Sugandhalaya LLP ("Defendant") intentionally defaulted in this case after litigating for several years. Plaintiffs initially filed the action against Defendant and others in the Northern District of Alabama in December 2016. (Dkt. # 1.) Defendant first

ORDER - 1

appeared in May 2017. (Dkt. # 29.) The action was transferred to this Court in July 2017. (Dkt. # 36.)

The core of Plaintiffs' allegation is that Defendant sold machine-made incense products with packaging or marketing displaying the address in Bengaluru, India, where Plaintiffs manufacture their higher-quality handmade incense, thus leading to consumer confusion and lost sales for Plaintiff.[1] (Am. Compl. (dkt. # 163), ¶¶ 72-95.) Defendant counterclaimed for declaratory judgment that it was authorized to use the Bengaluru address. (Dkt. # 164 at 31-32.)

For several years, Defendant vigorously defended against Plaintiffs' claims throughout the case's procedural history, which included transfer, multiple appeals, remand, administrative closure, and reopening. (*See dkt.*) However, after multiple changes in attorney representation, default was entered against Defendant on August 25, 2025, because its last attorney withdrew and it failed to enter a notice of appearance of new counsel. (*See* dkt. ## 173, 187, 274-77.) Plaintiffs now seek default judgment granting relief on their claims. (Mot.)

### III.   DISCUSSION

#### A.   Default Judgment

In reviewing a motion for default judgment, the court takes all well-pleaded factual allegations as true. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

---

[1] Plaintiffs also allege that they (and Defendant) are permitted to use the Shrinivas Sugandhalaya mark and trade dress, but that Defendant has interfered with Plaintiffs' business relations by claiming infringement and demanding that distributors cease importing and selling Plaintiffs' products. (Am. Compl., ¶¶ 14-19, 115-24.) In their Motion, Plaintiffs noted the Amended Complaint sought an injunction prohibiting Defendant from communicating to anyone that Plaintiffs' use of the mark was unauthorized. (Mot. at 9.) They provided no argument in support of this request, however, and later expressly relinquished the related claim for trade dress non-infringement. (Suppl. at 2.) The Court therefore DENIES the Motion to the extent it seeks such an injunction.

ORDER - 2

1975)). Entry of default does not establish "necessary facts not contained in the pleadings, and claims which are legally insufficient." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The Court considers seven factors when determining whether to grant default judgment (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As to the first factor, "prejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (internal quotation marks omitted). Here, absent default judgment, Plaintiffs will suffer prejudice because they have no other way to resolve their claims. While the parties neared settlement on the claims at issue in this action, the settlement did not come to fruition. (*See, e.g.*, dkt. # 121.) This factor weighs in favor of default judgment.

The second and third factors, often analyzed together, consider whether a plaintiff has a viable claim. *Curtis*, 33 F. Supp. 3d at 1211. Plaintiffs assert nine claims in their Amended Complaint. (*See* Am. Compl., ¶¶ 142-230.) In their briefing, however, Plaintiffs primarily rely on their claims under the Lanham Act, 15 U.S.C. § 1125(a), and Washington Consumer Protection Act ("WCPA"), RCW 19.86.020, and address other claims only in the alternative. (*See* Mot. at 4, 6-7, 9; Suppl. at 2.)

<u>Lanham Act Claims, 15 U.S.C. § 1125(a)</u>

Lanham Act claims require showing the use in commerce of any "word, false designation of origin, false or misleading description, or representation of fact" that is "likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007); *see also* 15 U.S.C. § 1125(a). There are two types of Lanham Act claims: (1) false association, which includes false designation of origin, involving "deceptive use of a trademark or its equivalent"; and (2) false advertising, involving "misrepresentation about a product [itself]." *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, 2014 WL 5365514, at *2 (W.D. Wash. Oct. 21, 2014) (alteration in original) (quoting *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005)).

For a false designation of origin claim, Plaintiffs must show that Defendant:

> (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question.

*Amazon.com, Inc. v. Wong*, 2024 WL 553695, at *5 (W.D. Wash. Feb. 12, 2024) (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015)). Taking the facts alleged in the Amended Complaint as true, Plaintiffs have adequately shown that Defendant used, in commerce, packaging displaying Plaintiffs' Bengaluru address, thereby misrepresenting the origin of its products. (*See* Am. Compl., ¶¶ 71-85.) Displaying Plaintiffs' address is likely to confuse consumers who prefer Plaintiffs' handmade incense and, since both brands use the "Shrinivas Sugandhalaya" mark, must rely on the place of manufacture to identify Plaintiffs' brand. (*Id.*, ¶¶ 86-95.) Plaintiffs have sufficiently stated a claim for false designation of origin.

A claim under the false advertising prong has five elements:

ORDER - 4

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). Plaintiffs have sufficiently alleged that displaying their address when advertising Defendant's products in interstate commerce was a false statement, which had the tendency to deceive a substantial segment of the target audience. (Am. Compl., ¶¶ 72-85, 96-107.) The statement was material because customers have few ways, other than the address, to distinguish between Plaintiffs' and Defendant's products. (*Id.*, ¶¶ 86-92, 107-11.) Plaintiffs have been injured by lost sales and a loss of goodwill. (*Id.*, ¶¶ 94-95, 112-14.) Plaintiffs have sufficiently stated a claim for false advertising.

<u>Washington Consumer Protection Act Claims, RCW 19.86.020</u>

To prevail on a WCPA claim, a plaintiff must satisfy five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) with a public interest impact, (4) resulting in injury to business or property, and (5) proximately caused by the misconduct. *Howard v. Patenaude & Felix APC*, 634 F. Supp. 3d 990, 1013 (W.D. Wash. 2022) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (Wash. 1986)). Taking as true the facts alleged in the Amended Complaint, Plaintiffs have shown a business injury, in the form of lost profits and goodwill, caused by Defendant's deceptive packaging and advertising in its commercial sales to the public. (Am. Compl., ¶¶ 71-114, 213-17.) Plaintiffs have sufficiently stated a WCPA violation.

Plaintiffs have made a sufficient showing on their Lanham Act and WCPA claims. Moreover, because Defendant participated in the case for several years before defaulting, Defendant's own litigation strategy is informative. Although Defendant sought to dismiss or stay this action in favor of alternate forums, based on lack of personal jurisdiction, or based on a putative settlement (*see* dkt. ## 29, 59, 85, 130, 242), Defendant did not challenge the sufficiency of the claims. The Court finds Plaintiffs have demonstrated their claims are viable. Accordingly, the second and third *Eitel* factors weigh strongly in favor of default judgment.

Turning to the fourth factor, Plaintiffs request over $11 million in damages, about half in actual damages and attorneys' fees and half in statutory prejudgment interest. (Mot. at 4.) While the amount sought is large, it reflects the quantity of sales Defendant made using deceptive packaging and advertising as well as the extensive litigation costs incurred by Plaintiffs in seeking relief. This factor weighs in favor of default judgment.

Regarding the fifth factor, because the Court assumes all well-pleaded facts are true upon entry of default, it is unlikely that a genuine dispute of material fact exists. *Sun Life Assurance Co. of Canada v. Estate of Wheeler*, 2020 WL 433352, at *5 (W.D. Wash. Jan. 28, 2020). Moreover, Defendant has not pointed to any factual dispute that would turn the case in its favor. *See Standard Ins. Co. v. Asuncion*, 43 F. Supp. 3d 1154, 1157 (W.D. Wash. 2014) (The fifth factor favors default judgment where defendant "failed to point to any factual dispute that may turn the case in her favor."). Throughout the litigation, Defendant has not challenged the essential facts concerning its display of Plaintiffs' address. This factor weighs strongly in favor of default judgment.

The sixth factor weighs strongly in favor of default judgment; there is no excusable neglect because Defendant purposely withdrew from the litigation. Finally, the seventh *Eitel*

ORDER - 6

factor reflects the preference that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. This preference is not dispositive, however. When a party withdraws its appearance, it becomes "impractical, if not impossible to reach a decision on the merits." *Asuncion*, 43 F. Supp. 3d at 1157. The seventh factor weighs against default judgment but does not preclude it.

Default judgment is warranted where at least four factors are in support or at least three factors "strongly" support it. *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1147 (9th Cir. 2024) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). Here, six factors weigh in favor of default judgment and one against. The balance of factors weighs heavily in Plaintiffs' favor and, accordingly, the Court grants default judgment for Plaintiffs on their Lanham Act and WCPA claims.

**B.    Relief Sought**

Having concluded default judgment is appropriate, the Court considers what relief should be granted. Plaintiffs seek entry of a default judgment ordering Defendant to pay $4,931,388.00 in actual damages, $5,201,628.06 in prejudgment interest, and $1,064,889.56 in costs and fees. (Mot. at 4.) They further seek a permanent injunction preventing Defendant from displaying the contested Bengaluru address on products, packaging, or advertising. (*Id.* at 9.)

　　　　　*1.    Damages*

The Court must ensure that the amount of damages awarded on default judgment is reasonable and supported by the evidence. *Curtis*, 33 F. Supp. 3d at 1211; *see also* Fed. R. Civ. P. 55(b)(2); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) ("detailed account" in declaration supported district court's default judgment damages calculation). Allegations in the complaint are not taken as true for the purpose of calculating damages. *See*

*Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the *amount* of damages, will be taken as true." (emphasis added)) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). Finally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Taken as true, the allegations in Plaintiffs' Amended Complaint establish that Defendant violated both the Lanham Act and the WCPA by displaying Plaintiffs' Bengaluru address on their incense products packaging and in advertising, causing consumer confusion and lost sales. (*See, e.g.*, Am. Compl., ¶¶ 78-79.) Under the WCPA, a plaintiff may sue "to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. The Lanham Act authorizes injunctions and permits recovery of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §§ 1116(a), 1117(a).

As evidence of the amount of damages suffered, Plaintiffs have submitted an expert report by Certified Public Accountants Neil J. Beaton and Benjamin P. Thomas calculating damages based on sales data provided by Defendant (the "Report"). (Hodges Decl. (dkt. # 288), ¶ 9, Ex. 2 (dkt. # 286).) The authors examined Defendant's sales spreadsheets and profit and loss statements from 2015 through 2025. (Report, ¶¶ 21, 26.) They "made the implicit assumption that an infringing sale made by [Defendant] would have gone to [Plaintiffs] at the same sale price[.]" (*Id.*, ¶ 21.) Because Defendant's internal audit in April 2025 identified "several critical issues" that, in the authors' opinion, made Defendant's contribution margin unreliable, the authors reviewed Plaintiffs' tax returns to estimate contribution margins and applied that to the

lost sales. (*Id.*, ¶ 27.) Deducting this estimated margin, the authors concluded that Plaintiffs had suffered economic damages in the form of lost profits of $4,931,388.00. (*Id.*, ¶¶ 27-29.)

Plaintiffs attempt to justify the Report's assumption that an infringing sale would have gone to them by arguing that they and Defendant were essentially in a two-player market for customers buying Shrinivas Sugandhalaya incense, and that injury is presumed where one of the two players violates the Lanham Act. (Suppl. at 10-11 (citing *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222 (10th Cir. 2023)). Assuming the presumption is applicable, it operates to establish the injury element of a Lanham Act claim, not to calculate damages. Where one player in a two-player market establishes that its competitor's advertising was false, there is a "presumption that the defendant has caused an injury; the *degree* of injury may have to be considered as a separate issue to be later determined when remedies are addressed." *Vitamins Online, Inc.*, 71 F.4th at 1241 (emphasis added). This presumption, alone, is insufficient to support the Report authors' assumption that all of Defendant's infringing sales would have gone to Plaintiffs.

The Lanham Act nonetheless provides flexibility to determine an appropriate award. A plaintiff is entitled, subject to the principles of equity, to recover "defendant's profits" attributable to a violation of § 1125(a). 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Here, Plaintiffs have presented sufficient evidence in the Report of Defendant's sales of infringing products. Defendant, having defaulted, cannot prove costs or deductions.

If a court finds an award based on profits would be either "inadequate or excessive," the court may exercise its discretion to award a different sum, guided by what is "just, according to

ORDER - 9

the circumstances of the case." 15 U.S.C. § 1117(a). Here, the Court finds awarding Plaintiffs the amount of Defendant's total sales from infringing products would be excessive because it would be unreasonable to assume the sales constituted pure profit. Plaintiffs' experts in their Report deduct a reasonable cost estimate based on Plaintiffs' contribution margin as disclosed in their tax returns. (*See* Report, ¶¶ 27-29.) The Court finds this net-profit calculation serves the interests of justice under the circumstances, considering that Plaintiffs and Defendant both manufacture in India and are likely to have similar costs. Defendant's default means that no better estimate is available, and any resulting uncertainty should not accrue to Plaintiffs' detriment. *See U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) ("He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded."). Accordingly, the Court awards Plaintiffs $4,931,388.00 in damages for the Lanham Act and WCPA claims.

    2.   Interest

    Federal courts adjudicating state law claims apply state laws to the issue of prejudgment interest. *See In re Exxon Valdez*, 484 F.3d 1098, 1100-01 (9th Cir. 2007) (in diversity or supplemental jurisdiction claims, prejudgment interest is determined by state law); *cf. Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008) ("federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law *alone*") (emphasis added).

    In Washington, a party is entitled to prejudgment interest where the amount due is "liquidated," meaning "the evidence furnishes data which, if believed, make it possible to compute the amount due with exactness, without reliance on opinion or discretion." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 685 (Wash. 2000), *as*

*amended* (Jan. 16, 2001) (citing *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32 (Wash. 1968)). In an unliquidated claim, by contrast, "the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed." *Hansen v. Rothaus*, 107 Wn.2d 468, 473 (Wash. 1986) (quoting *Prier*, 74 Wn.2d at 32). The distinction is based on the principle that, while a plaintiff should be compensated for the "use value" of money they are owed, a defendant should not be "required to pay prejudgment interest in cases where he is unable to ascertain the amount he owes to the plaintiff." *Id.*

"Even if the claim is disputed, the claim may still be liquidated." *Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co.*, 160 Wn. App. 912, 925 (Wash. App. 2011). Where a damages calculation is "based on an assumption," however, the exact amount cannot be fixed and the claim is unliquidated. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 743 F. App'x 771, 777 (9th Cir. 2018).

Here, Plaintiffs have brought a liquidated claim for Defendant's net profits attributable to infringing sales. The amount is readily determinable by subtracting Defendant's costs from its sales of infringing products. Defendant is in the best position to ascertain that amount, and should not be able to evade paying prejudgment interest by failing to produce the information. While a "defendant cannot stop the running of interest by paying the plaintiff if that defendant does not know the amount due." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 125 (Wash. 2014). Here, Defendant knew the amount due based on its sales and its costs. As discussed above, the Court's award of damages approximates that amount based on the best

information available despite Defendant's default. The Court concludes that prejudgment interest is appropriate.

Except for certain claims not found here, prejudgment interest is set at the maximum rate permitted under RCW 19.52.020, which is 12%. RCW 4.56.110(6), 19.52.010(1). Based on the annual sales calculated in Plaintiffs' experts' Report, prejudgment interest is awarded for each year on the imputed profit from the cumulative sales up to that date, as summarized in the table below:

| Year | Cumulative Infringing Sales | Cumulative Imputed Profits | Prejudgment Interest |
| --- | --- | --- | --- |
| 2016 | 12.2% | $603,361.41 | $72,403.37 |
| 2017 | 19.6% | $968,141.93 | $116,177.03 |
| 2018 | 70.7% | $3,487,872.64 | $418,544.72 |
| 2019 | 74.5% | $3,671,856.59 | $440,622.79 |
| 2020 | 80.6% | $3,973,585.71 | $476,830.28 |
| 2021 | 88.4% | $4,361,705.48 | $523,404.66 |
| 2022 | 92.6% | $4,567,476.71 | $548,097.21 |
| 2023 | 98.7% | $4,866,094.46 | $583,931.34 |
| 2024 | 100.0% | $4,931,388.00 | $591,766.56 |

Accordingly, the total prejudgment interest awarded is $3,771,777.95.

    3.  *Attorney Fees and Costs*

Plaintiffs contend they should be awarded attorneys' fees under the Lanham Act because this is an "exceptional" case. (Mot. at 10 (quoting 15 U.S.C. § 1117(a)).) An exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts may consider a "nonexclusive" list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n. 6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

ORDER - 12

Plaintiffs contend their allegations that Defendant's conduct was "willful and done to mislead consumers" establish this case as exceptional. (Mot. at 11.)

In the alternative, Plaintiffs seek an award of attorneys' fees pursuant to their WCPA claim. (Mot. at 11 (citing RCW 19.86.090).) The WCPA allows a prevailing plaintiff to recover "the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. The Court need not assess whether this action is exceptional under the Lanham Act because attorneys' fees and costs are recoverable under the WCPA.

Plaintiffs request a total of $1,064,889.56 in attorneys' fees and costs, broken down as follows:

- Attorneys' fees of $193,986.90 for Scott S. Brown, partner at Mixon Brown, LLC. (Brown Decl. (dkt. # 283), ¶ 7.) Mr. Brown billed for 588.0 hours, at $350.00 per hour in 2020 through 2023 and $400.00 per hour in 2024 and 2025, for a total of $228,483.50. Plaintiffs subtract $7,864.60 for a 10% discount on Mr. Brown's fees in 2025 and $26,632.00 for time entries that included "R. Expo," a previously dismissed party. (*Id.*, ¶¶ 3-7.)

- Attorneys' fees of $767,910.00 for 1,844.3 hours billed by Foster Garvey PC attorneys and paralegals Joel Ard (15.3 hours), Michele Barger (93.8 hours), Kate Bradley (104.7 hours), Larry Brant (1.4 hours), Bianca G. Chamusco (28.5 hours), Devra R. Cohen (91.9 hours), Julia Doherty (28.9 hours), Ryan Duffey (7.8 hours), Peter A. Evalds (15.4 hours), Tim J. Filer (2.2 hours), Madeline D. Hepler (16.2 hours), Benjamin J. Hodges (661.2 hours), Angelo Marchesini (27.6 hours), Kelly A. Mennemeier (9.7 hours), Steve D. Nofziger (0.4 hours), Maggie S. Sholian (4.5 hours), Nancy V. Stephens (2.2 hours), Renee Stewart (5.8 hours), Yeli Zhou (649.0 hours), and Todd Ziegenbein (77.8 hours). (Hodges Decl. (dkt. # 288), ¶ 6, Ex. 1 at 55.) Foster Garvey billed $887,886.50 for the 1,844.3 hours. Plaintiffs subtract a 10% discount in 2025 and $108,511.50 for time entries that included "R. Expo." (*Id.*, ¶¶ 4-6.)

- Costs of $48,446.58 for both law firms and $96,460.08 for e-discovery vendor costs. (Mot. at 13 n. 3; *see also* Brown Decl., ¶ 8, Ex. 2 (dkt. # 285 at 16) ($11,717.13 for filing fees and travel costs); Hodges Decl., ¶¶ 7, 24, Exs. 1 at 55, 4 at 369 ($96,460.08 billed by Transperfect e-discovery vendor).)

- The sum of these figures is $1,106,803.56. Plaintiffs then subtract $41,914.00 for the amount previously requested for fees on their motion to compel (*see* dkt. # 237), for a total request of $1,064,889.56. (Mot. at 13 n. 3.)

ORDER - 13

To determine whether a request for attorneys' fees is reasonable, a court first performs a lodestar analysis, multiplying an attorney's reasonable hourly rate by the number of hours reasonably expended, *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1020 (9th Cir. 2022), then considers whether to adjust the lodestar figure upward or downward based on factors not subsumed in the lodestar calculation. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). No factors for modifying the lodestar have been suggested here.

For the lodestar calculation the Court must determine reasonable hourly rates as well as a reasonable number of hours, deducting any that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). On a previous fee petition, the Court found $450.00 per hour for Mr. Hodges and $350.00 per hour for Ms. Zhou reasonable, and reaffirms that finding for purposes of the instant Motion. (Dkt. # 237 at 6.) For similar reasons, the Court finds Mr. Brown's actual billed rates of $350.00 per hour in 2020 through 2023 and $400.00 per hour for 2024 and 2025, with a 10% discount in 2025, reasonable for a partner with many years of experience. (*See id.*; Brown Decl., ¶¶ 1, 3.) For the remaining Foster Garvey personnel, Plaintiffs do not identify who is an attorney or a paralegal, provide their actual hourly rates, nor offer any basis to assess a reasonable hourly rate for their work. The Court therefore declines to award fees for these individuals.

The Court finds the remaining hours billed are reasonable. Mr. Hodges billed 661.2 hours, Ms. Zhou 649.0, and Mr. Brown 588.0. The total of 1,898.2 hours for several years of litigation is not excessive.

Mr. Brown's charges of $193,986.90 are further reduced by the $4,496.00 sought on the earlier fee petition related to a motion to compel. (*See* dkt. # 229 at 6.) The Court awards $189,490.90 for Mr. Brown's work.

ORDER - 14

1   Mr. Hodges' 661.2 hours, reduced by the 23.8 hours sought on the previous fee petition,
2   total 637.4. (*See* dkt. # 237 at 6.) Based on the imputed rate of $450.00 per hour, the Court
3   awards $286,830.00 for Mr. Hodges' work.
4   Ms. Zhou's 649.0 hours, reduced by the 50.3 hours sought on the previous fee petition,
5   total 598.7. (*See* dkt. # 237 at 6.) Based on the imputed rate of $350.00 per hour, the Court
6   awards $209,545.00 for Ms. Zhou's work. The total award for all three attorneys' fees is
7   $685,865.90.
8   With regard to costs and expenses, Plaintiffs have documented Mixon Brown's charges
9   of $11,717.13 for filing fees and travel expenses and Transperfect's charges of $96,460.08 for e-
10  discovery services. (Brown Decl., Ex. 2; Hodges Decl., Ex. 4.) The Court finds these fees
11  reasonable, considering Mr. Brown had to travel to India for scheduled depositions and Plaintiffs
12  engaged in significant e-discovery before Defendant defaulted. It appears Plaintiffs also request
13  $36,729.45 for Foster Garvey's costs and expenses. (*See* Mot. at 13 n. 3 (requesting total costs of
14  $48,446.58).) Plaintiffs provide no justification for this portion of the costs request. However,
15  they document $6,848.21 in airfare, $1,455.70 in lodging, and $74.46 in meals, totaling
16  $8,378.37, which the Court finds to be reasonable travel expenses. (Hodges Decl., Ex. 1 at 55.)
17  Accordingly, the Court awards $116,555.58 in total costs and expenses.
18              4.      *Injunctive Relief*
19  The Lanham Act permits a court to issue an injunction, in accordance with principles of
20  equity, to "prevent a violation" of § 1125(a). 15 U.S.C. § 1116(a). Under equitable principles, a
21  plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable
22  injury; (2) that remedies available at law, such as monetary damages, are inadequate to
23  compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

ORDER - 15

1  and defendant, a remedy in equity is warranted; and (4) that the public interest would not be
2  disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391
3  (2006).

4  The first element is satisfied by the entry of default judgment here because Plaintiffs are
5  entitled to a "rebuttable presumption of irreparable harm upon a finding of a violation" of
6  § 1125(a). 15 U.S.C. § 1116(a). Regarding the second element, monetary damages alone will not
7  necessarily prevent further infringing conduct because, given Defendant's default, there can be
8  no assurances that it will no longer engage in the conduct at issue in this case. *See Advanced*
9  *Hair Restoration LLC v. Parsa Mohebi, M.D., Inc.*, 793 F. Supp. 3d 1306, 1319 (W.D. Wash.
10 2025). The third factor favors Plaintiffs because they seek to enjoin Defendant from engaging in
11 illegal conduct that benefits only itself. *See id.* Finally, the public interest is not disserved by
12 requiring Defendant to refrain from illegal conduct. Finding all four factors satisfied, the Court
13 will enter an injunction.

### IV. CONCLUSION

15  For the foregoing reasons, the Court GRANTS in part Plaintiffs' Motion for Default
16 Judgment (dkt. # 278). Default judgment is entered in Plaintiffs' favor on the Lanham Act and
17 Washington Consumer Protection Act claims. Defendant is ORDERED to pay to Plaintiffs:
18  (1) Damages in the amount of $4,931,388.00;
19  (2) Prejudgment interest in the amount of $3,771,777.95;
20  (3) Attorneys' fees in the amount of $685,865.90; and
21  (4) Costs and expenses in the amount of $116,555.58.
22  The Court also permanently ENJOINS Defendant from displaying the "1/9, 8th Cross,
23 Magadi Rd, Bengaluru – 560 023, INDIA" address, or any confusingly similar variation thereof,

ORDER - 16

1 on any products or product packaging or in connection with the advertisement of its products, including displaying the address on any website.

Plaintiffs' remaining claims, Defendant's counterclaim, and this action are DISMISSED with prejudice.

Dated this 22nd day of December, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge